UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 02-CV-1725 (JFB) (SMG)

---

PETER J. MALONEY and MARILYN G. MALONEY,

Plaintiffs,

VERSUS

SOCIAL SECURITY ADMINISTRATION, ANNE JACOBSKY,
J. GLASSER, MS. CRUMBLE, JANET MULLARKEY,
SOMRAMRUP and OTHER UNKNOWN
EMPLOYEES OF THE SOCIAL
SECURITY ADMINISTRATION,

Defendants.

---

MEMORANDUM AND ORDER
June 19, 2006

---

JOSEPH F. BIANCO, District Judge:

Plaintiffs bring this action asserting claims under 42 U.S.C. § 401, *et seq.* ("Social Security Act"), 42 U.S.C. §§ 1983, 1985, 1986, 42 U.S.C. §§ 6101-6107 ("Age Discrimination Act"), and the Fourth, Fifth, and Fourteenth Amendments. Plaintiffs allege that defendants unlawfully suspended their social security benefits, subjected them to harassment, conspired in denying them a hearing, discriminated against them on the basis of age, and violated their due process rights. In particular, plaintiffs allege that their social security benefits were suspended without a hearing, and that their repeated requests for a hearing have been ignored. (Am. Compl. ¶¶ 43–46.) Plaintiffs seek past due social security benefits, actual and punitive money damages, and declaratory and injunctive relief. Defendants have now moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b). Defendants argue that plaintiffs have failed to exhaust their administrative remedies, and that the complaint fails to state claims upon which relief can be granted. Plaintiffs have subsequently cross-moved for summary judgment.

For the reasons stated below, the Court holds that the claim for past due social

security benefits is dismissed pursuant to Rule 12(b)(1) based on plaintiffs' failure to exhaust their administrative remedies, and defendants' motion to dismiss is granted with respect to the remainder of plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

I. BACKGROUND

A. FACTS

In October 1994, Mr. Maloney applied for old-age (retirement) insurance benefits under the Social Security Act to commence upon his sixty-fifth birthday in December 1994. *See* 42 U.S.C. § 402(a); 20 C.F.R. § 404.310; (Decl. of Janet Mullarkey attached as Exhibit 1 to Decl. of Kathleen A. Mahoney (hereinafter "Mullarkey Decl.") ¶ 3, Exs. A-C.) Mr. Maloney alleges that he requested information in October 1994, but did not actually file for benefits. On December 7, 1994, Mrs. Maloney applied for wife's insurance benefits based on her husband's earnings record to commence when her husband's benefits did.[1] *See* 42 U.S.C. § 402(b); 20 C.F.R. § 404.330; (Mullarkey Decl. ¶ 5, Ex. D.) The Social Security Administration ("SSA") determined that Mr. Maloney was entitled to benefits effective December 1994, and that Mrs. Maloney's monthly benefit rate would increase effective December 1994 to reflect the additional wife's insurance benefits to which she was entitled. (*See id.* ¶¶ 4, 6.)

Mr. Maloney, however, elected to defer his old-age insurance benefits until he retired from working as a self-employed attorney in the hope that he would receive a greater amount of benefits due to the fact he worked for a longer period of time. (*See id.* ¶¶ 7-8.) Accordingly, the additional wife's insurance benefits that Mrs. Maloney was to receive were also suspended. (*See id.* ¶ 7.)

By letter dated August 6, 1996, Mr. Maloney informed the SSA that he was planning to retire effective October 1, 1996.[2] (*See id.* ¶ 11, Ex. L.) In October 1996, however, the SSA determined that Mr. Maloney was continuing to work and, thus, denied paying him any retirement benefits. (*See id.* ¶ 12, Ex. M.) When the SSA asked Mr. Maloney in early 1997 for more information about his retirement status, he reported that he was still working over 45 hours per week, that he had earned $65,000 to $70,000 in 1996, and that he was currently earning $1,000 per month. (*See id.* ¶¶ 14-16, Exs. N, P, Q.)

The SSA continued to seek more information about Mr. Maloney's earnings. (*See id.* ¶¶ 17-18, Exs. R, S.) By letter dated July 8, 1997, Mr. Maloney explained that he thought he was entitled to retirement benefits because, as of October 1, 1996, he had reduced the number of hours that he worked and was earning approximately $1,000 per month, less than the maximum allowed by law when collecting retirement benefits.[3] (*See id.*

---

[1] Mrs. Maloney was already receiving old-age insurance benefits since 1992 based on her own earnings record. (*See* Mullarkey Decl. ¶ 2.)

[2] Mr. Maloney had previously stated that he would retire on March 1, 1996. (*See* Mullarkey Decl. ¶ 8, Ex. G.) However, when this date arrived, Mr. Maloney refused any social security benefit checks and informed the SSA that he was not yet retiring. (*See id.* ¶ 9, Exs. H-K.)

[3] 42 U.S.C. § 403(f)(8)(D)(i) provides for an allowable amount of income of $1,041.66 per month for the 1996 taxable year (totaling $12,500 for the year).

¶ 19, Ex. T.) Based on another letter dated July 21, 1997, in which Mr. Maloney represented that his earnings for 1997 would not exceed $12,000, the SSA reinstated his retirement benefits effective January 1997. (*See id.* ¶¶ 20-21, Exs. U, W.) In September 1997, the SSA sent him a check for $12,694.60 in retroactive benefits and reinstated Mrs. Maloney's insurance benefits as wife. (*See id.*)

On October 1, 1998, in an effort to verify Mr. Maloney's retirement status, the SSA requested that Mr. Maloney provide a copy of his federal income-tax returns for 1997. (*See id.* ¶ 22, Ex. X; Aff. of Peter J. Maloney dated January 2, 2003[4], Ex. 19, attached as Ex. 3 to Decl. of Daniel Kogan (hereinafter "Maloney Aff.")) Mr. Maloney faxed the SSA a copy of his 1997 income-tax return. However, it was illegible. By letter dated December 11, 1998, the SSA requested that Mr. Maloney resubmit clearer copies. (*See* Maloney Aff., Ex. 17.) On December 28, 1998, the SSA again requested his complete income-tax returns for 1997 and also for 1996, and stated that Mr. Maloney's claim for benefits would be denied if the SSA did not hear from him by January 13, 1999. (*See* Mullarkey Decl. ¶ 23, Ex. X; Maloney Aff., Ex. 18.) Mr. Maloney contends that he provided his tax documents to the SSA.

The SSA contended that it was unable to determine Mr. Maloney's retirement status due to incomplete information, the SSA presumed that he was still self-employed on a full-time basis rendering "substantial services." *See* 42 U.S.C. § 403(f)(4); 20 C.F.R. §§ 404.446-447; (Mullarkey Decl. ¶ 25, Exs. Y-Z). Consequently, the SSA notified both of the Maloneys, by letters dated April 13, 1999, that their benefits were being suspended effective January 13, 1999, and that they both were overpaid from January 1997 to February 1999 in the respective amounts of $36,625.90 and $11,868.00. *See* 42 U.S.C. § 403(b); (Maloney Aff. Exs. 1, 45).

The Maloneys requested reconsideration of that decision in May of 1999, within the sixty day time period pursuant to 20 C.F.R. § 404.909(a)(1). (*See* Maloney Aff., Exs. 2, 19; Mullarkey Decl., Ex. AA.) On May 27, 1999, Mr. Maloney wrote the SSA again, but instead of requesting a reconsideration decision, he asked to proceed directly to an administrative hearing. (*See* Maloney Aff., Ex. 20; Mullarkey Decl., Ex. AA.) On June 9, 1999, plaintiffs jointly asked simultaneously for a hearing on Form HA-501 pursuant to 20 C.F.R. § 422.203(b)(1) and for reconsideration. (*See* Maloney Aff., Ex. 21.) Thereafter, on both June 21, 1999, and August 26, 1999, Mr. Maloney wrote the SSA referencing plaintiffs' previous letters requesting a hearing. (*See* Maloney Aff., Exs. 22, 25.)

Mr. Maloney received a notice dated March 4, 2001, that informed him that his benefits were being reinstated effective December 1999, when he became seventy-years-old. (*See* Maloney Aff., Exs. 36-37; Mullarkey Decl. ¶ 28.) The SSA further stated that because Mr. Maloney was still overpaid $11,693.50, the SSA planned to

---

[4] Two affidavits of Peter J. Maloney and Marilyn G. Maloney were submitted with the cross-motions. The affidavits sworn to on January 2, 2003 were submitted with the original motion and were resubmitted as exhibits to the Declaration of Daniel Kogan. The affidavits of the Maloneys dated October 22, 2004 are new affidavits, submitted with the October 2004 cross-motion for partial summary judgment.

recoup the remaining overpayments by withholding his benefits for about six months.[5] (*See* Mullarkey Decl. ¶ 28; Maloney Aff., Exs. 36, 38, 42.) On March 14, 2001, Mr. Maloney, upset with any withholding of his benefits, again simultaneously requested a hearing on Form HA-501 and a reconsideration determination, and mentioned that he had requested hearings in this matter many times before. (*See* Maloney Aff., Ex. 37; Mullarkey Decl., Exs. EE-GG.) In a letter dated May 22, 2001, the SSA confirmed that it received Mr. Maloney's previous letter, and explained the procedures for requesting a hearing. (*See* Maloney Aff., Ex. 39, 41; Mullarkey Decl., Ex. HH.)

Approximately one year later, by letter dated March 11, 2002, the SSA requested that Mr. Maloney provide copies of his 1998 and 1999 income-tax returns. (*See* Mullarkey Decl. ¶ 31, Ex. II.) Instead of complying with the SSA's request, plaintiffs filed this suit in federal court on March 26, 2002. In the complaint, plaintiffs primarily sought past due social security benefits and asserted violations of their due process rights in that their social security benefits were improperly suspended without a hearing, and that they were not afforded a hearing within a reasonable time after their benefits were suspended.

Mr. Maloney made repeated requests over three years for reconsideration. However, the SSA did not issue a reconsideration decision until September 2002 – only after plaintiffs filed this lawsuit. On September 1, 2002, plaintiffs' request for reconsideration was finally reviewed. (*See* Mullarkey Decl., Ex.

---

[5] The SSA recovered most of the accumulated $36,625.90 in overpayments by withholding the benefits that the SSA owed to Mr. Maloney since December 1999. (*See* Maloney Aff., Ex. 36.)

JJ.) The SSA, however, denied plaintiffs' request for past social security benefits. (*See id.*) In its decision, the SSA explained that plaintiffs had not established by convincing evidence that Mr. Maloney had in fact retired; consequently, they were not entitled to benefits prior to Mr. Maloney turning seventy-years-old in December 1999. (*See id.*) The decision also stated that much of the delay in the case was due to plaintiffs' failure to provide the SSA with the information requested to resolve their case. (*See id.*) Plaintiffs thereafter jointly requested a hearing by letter dated October 10, 2002, within the sixty day time period pursuant to 20 C.F.R. § 404.933(b), but not on the proper Form HA-501.[6] (*See* Maloney Aff., Ex. 14.) Following a conference before Magistrate Judge Gold on July 22, 2002, defendants sent plaintiffs' claims file to the Administration's Office of Hearings and Appeals and asked that a hearing be scheduled expeditiously. A hearing was not held until September 2003.

B. PROCEDURAL HISTORY

Plaintiffs filed this action in March 2002 asserting various claims against the Social Security Administration. In a letter to the Court dated August 8, 2002, the Assistant United States Attorney indicated that it was discovered that no reconsideration, the second

---

[6] Although defendants initially claimed that Mr. Maloney never requested an administrative hearing following the September 1, 2002 reconsideration decision, (*see* Mullarkey Decl. ¶ 33), they later discovered that Mr. Maloney had requested a hearing in October 2002. (*See* Declaration of Valerie Ryan attached as Ex. 2 to Declaration of Kathleen A. Mahoney (hereinafter "Ryan Decl.") ¶ 5.), Team Leader of the SSA's Program Operations Center in the New York Regional Office, dated April 23, 2003.)

step in the administrative process, had been made of the Maloneys' case. In September 2002, the SSA reviewed the Maloneys request for reconsideration. The SSA denied any benefits past due on the grounds that the Maloneys had not provided adequate proof of retirement before the age of seventy. Between August and December 2002, a number of motions were filed and subsequently withdrawn or mooted. In January 2003, defendants filed a motion for judgment on the pleadings and plaintiffs filed a cross-motion for judgment on the pleadings. With the intervention of this Court, the SSA sent the Maloneys' claims file to the Office of Hearings and Appeals and asked that a hearing be scheduled expeditiously. In September 2003, counsel for the defendants, Assistant United States Attorney Kathleen Mahoney, informed this Court that a hearing, the third step in the process, was scheduled for later that month. The decision, dated October 7, 2003, was fully favorable to plaintiffs. The ALJ decision awarded Mr. Maloney benefits as of October 1996, finding that he was retired as of that date.

After the hearing decision was rendered, by Order dated March 1, 2004, the Honorable Carol B. Amon withdrew defendants' motion and plaintiffs' cross-motion, without prejudice to refiling with new briefs addressing the ramifications of the administrative decision in plaintiffs' favor. Defendants, by letter dated March 5, 2004, have asked that their motion be deemed re-filed. Defendants contend that plaintiffs' action is improperly before the Court, both because additional administrative remedies remain unexhausted, and because plaintiffs' claims have been mooted by the SSA decision.

Plaintiff Peter Maloney has submitted an affidavit, dated March 11, 2004. In his affidavit, Maloney states that plaintiffs intend to pursue their lawsuit despite the October 2003 SSA decision. Plaintiffs were then granted leave to file an amended complaint, which was filed April 6, 2004. The amended complaint adds a claim for an immediate accounting for all benefits due and adds and deletes defendants. (Am. Compl. ¶¶ 1, 56.) In July 2004, defendants filed a motion to dismiss. Plaintiffs then filed their opposition and a cross-motion for summary judgment. These are the motions currently pending before the Court. In defendants' motion to dismiss, they raise several grounds: (1) plaintiffs' claims are moot; (2) plaintiffs failed to exhaust administrative remedies; (3) lack of subject matter jurisdiction; (4) sovereign immunity and qualified immunity; (5) failure to state a claim under § 1983 and § 1985; and (6) lack of subject matter jurisdiction on the remaining claims – diversity, Declaratory Judgment Act, and the Age Discrimination Employment Act.

This case was assigned to the Honorable Magistrate Judge Gold by the Honorable Carol B. Amon for a report and recommendation.[7] The case was subsequently reassigned to this Court and the Court vacated the referral order for a report and recommendation. Oral argument was held on May 23, 2006.

---

[7] On February 11, 2003, Judge Gold conducted a telephone conference. *See* Docket Entry 22. During this conference, Judge Gold ruled that defendants did not need to respond to plaintiffs' cross-motion if he ultimately recommended that defendants' motion be granted and Judge Amon adopted the recommendation. *See id.*

5

I. DISCUSSION

A. CLAIMS RELATED DIRECTLY TO BENEFITS

As set forth below, plaintiffs' first, second, third, and eighth claims relate directly to benefits and are dismissed under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction for failure to exhaust and as moot.[8]

A motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Coveal v. Consumer Home Mortgage, Inc.,* No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *6 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012, 124 S.Ct. 532(2003)). Further, the court may consider evidence beyond the pleadings to resolve disputed issues of fact regarding its jurisdiction. *See Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 255 n.30 (2d Cir. 2003). "A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal*, 2005 U.S. Dist. LEXIS, at *7 (quoting *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Alambama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

Under 42 U.S.C. § 405(g), federal courts are vested with subject matter jurisdiction only over "final decisions" of social security claims.[9] Because plaintiffs have not received final decisions on their claims, their claims for benefits should be dismissed based on a failure to exhaust. Moreover, since they have received a favorable ruling (including retroactive benefits) subsequent to the initiation of this lawsuit, their claim is moot.

A final decision, pursuant to 42 U.S.C. § 405(g), occurs when a social security claimant exhausts a four-step administrative review process. *See* 20 C.F.R. § 404.900(a). These four steps must be requested by a claimant within certain time periods and in the following order: (1) initial determination; (2) reconsideration determination; (3) hearing before an administrative law judge; (4) and Appeals Council review. *See id.* Although the administrative steps prescribed by the Commissioner of Social Security must be exhausted in order to obtain a final decision, this requirement is waivable by the Commissioner or the court in certain circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). Waiver may occur when the following circumstances are present:

---

[8] Additionally, the only proper party for any benefit claims review by the district court pursuant to 405(g) is the Commissioner. *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000) (holding that the plaintiff could not state a claim against the Regional Commissioner or field office manager under 405(g)); *see also Scott v. Comm'r of SSA*, No. 5:02-CV-581 (NPM), 2002 U.S. Dist. LEXIS 18364, at *1-2 (N.D.N.Y. Sept. 30, 2002) ("The Commissioner is the proper defendant in any action seeking judicial review under the Social Security Act.").

[9] As defendants correctly point out, neither 42 U.S.C. § 405(d) nor 42 U.S.C. § 405(d)(1) confer jurisdiction on this Court to consider the benefit claims.

(1) the claim is collateral to a demand for benefits; (2) the exhaustion of remedies would be futile; and (3) plaintiffs would suffer irreparable harm if required to exhaust administrative remedies. *See Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996).

Plaintiffs, however, do not have a final decision regarding their claim for past due social security benefits that is capable of review in federal court. At the time this suit was filed, plaintiffs had not yet exhausted the second step in the process. Since then, plaintiffs' claims have proceeded through step three, but plaintiffs failed to file for review by the Appeals Council, the final step in the administrative process. Thus, plaintiffs do not have a final decision on their claims and this court lacks jurisdiction over their claims for benefits.[10] *See Iwachi v. Massanari*, 125 Fed. Appx. 330, 332 (2d Cir. 2005) ("The Commissioner's decision does not become 'final until after the Appeals Council has denied review or decide the case after review.'" (quoting *Mathews v. Chater*, 891 F. Supp. 186, 188 (S.D.N.Y. 1995)).

Furthermore, there has been no waiver of the exhaustion requirement for the following reasons. First, plaintiffs' claim for past due social security benefits is not collateral to a demand for benefits. Second, plaintiffs have not shown that exhaustion would be futile. Third, plaintiffs would not suffer irreparable harm if required to exhaust the administrative procedures because they currently receive benefits. *See Smith v. Schweiker*, 709 F.2d 777, 780-781 (2d Cir. 1983) (finding no waiver under similar circumstances); *Mathews v. Chater*, 891 F. Supp. at 188-189 (same).

The Supreme Court, however, does recognize an exception to the exhaustion requirement for constitutional claims. *See Califano v. Sanders*, 430 U.S. 99, 109 (1977) (holding that a court may maintain jurisdiction if plaintiff presents colorable constitutional claim) (*citing Eldridge*, 424 U.S. at 332; *Weinberger v. Salfi*, 422 U.S. 749, 761 (1975)); *see also Crumble v. Secretary of Health and Human Servs.*, 586 F. Supp. 57, 60 (E.D.N.Y. 1984) (finding that the court had jurisdiction over due process claim raised where plaintiff was not afforded an opportunity to explain his failure to appear at a hearing to respond to a notice to show cause). "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to

---

[10] To the extent plaintiffs now claim in the instant motion that they are entitled to additional accounting due to a change in the amount of monthly benefits being paid to Mr. Maloney since the September 2003 hearing, this claim must also fail for a failure to exhaust. Mr. Maloney filed a letter request for reconsideration with the SSA on August 27, 2004 in connection with an SSA letter dated July 27, 2004, setting forth an explanation of benefit computations. (*See* Aff. of Peter J. Maloney dated August 27, 2004 ¶ 4, Ex. 12, Defs.' Supp. Letter, App. B.) On May 1, 2005, the SSA issued a reconsideration determination stating that the claim was reviewed again and the first decision was correct. (Defs.' Supp. Letter, App. D.) The May 1, 2005 determination explained how Mr. Maloney's benefits were computed based on his October 1996 retirement. The reconsideration determination advised plaintiff of his right to request a hearing if he disagreed with the determination within 60 days. (*Id.*) Plaintiff did not file a request for a hearing and, thus, failed to exhaust administration remedies. Therefore, plaintiff does not have a final decision after a hearing subject to review by this Court under 42 U.S.C. § 405(g). Accordingly, to the extent plaintiffs now make a claim for the computation of benefits, that claim is dismissed.

the courts is essential to the decision of such questions." *Califano*, 430 U.S. at 109. This Court, therefore, has subject matter jurisdiction over plaintiffs' constitutional claims relating to the suspension of their social security benefits. This Court does not, however, have jurisdiction over plaintiffs' claim for past due social security benefits and these claims must be dismissed under Fed. R. Civ. P. 12(b)(1).

Furthermore, any claim for benefits would be barred as moot since plaintiffs received retroactive benefits subsequent to the initiation of the lawsuit. "In a social security action seeking payment of benefits, the actual payment of those benefits generally moots the action." *Headen v. Sullivan*, No. 91-CV-5817 (KMW), 1992 WL 471168, at *2 (S.D.N.Y. Sept. 8, 1992). "Federal courts lack jurisdiction to hear moot cases because such cases to not meet the 'case or controversy' requirement of Article III of the Constitution." *Id.*

B. MOTION TO DISMISS

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atlantic Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

1. 42 U.S.C. § 1983

Plaintiffs allege a cause of action pursuant to 42 U.S.C. § 1983 in their complaint. However, as defendants point out, Section 1983 by its express terms does not apply to actions of the federal government or its officers. *See Hong v. United States*, 920 F. Supp. 311, 314 (E.D.N.Y. 1996) (*citing Murray v. United States Dep't of Justice*, 821 F. Supp. 94, 100 (E.D.N.Y. 1993)); *see also District of Columbia v. Carter*, 409 U.S. 418, 424-25, 93 S. Ct. 602, 606-07 (1973) ("actions of the Federal Government and its officers are [] exempt from [section 1983's] proscriptions"). Section 1983 applies only to actions taken by state officials acting under the color of state law. Because the defendants in this case are acting under federal law by distributing federal funds, plaintiffs fail to state a cause of action under 42 U.S.C. § 1983.[11] *See Drago v. Port Auth. of N.Y. & N.J.*, 1993 U.S. Dist. LEXIS 2456, at *5

---

[11] The government states that the defendants are officials and employees of a federal agency, but it is the Court's understanding that the local SSA offices are actually state-run agencies. However, the Second Circuit held in a Social Security disability benefits case that "state officials were not acting under state law." *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981). The Court stated, "Title II of the Social Security Act contrasts with other benefits programs in that the funds are entirely of federal origin and the state agencies function solely as agents of the Secretary in making determinations of disability, applying federal law and federal regulations in accordance with procedures prescribed by her." *Id.* at 84 n.17. The same reasoning applies here to agents issuing retirement benefits.

8

(E.D.N.Y. Feb. 24, 1993) (dismissing § 1983 claim because "the named defendants are private individuals, private corporations, and federal agencies" and thus "have not acted under 'color of state law'").

### 2. 42 U.S.C. § 1985

Under a liberal reading of the complaint, plaintiffs allege a conspiracy under 42 U.S.C. § 1985(3) to deprive plaintiffs of their right to due process and to harass plaintiffs. Section 1985(3) prohibits conspiracies by two or more persons that interfere and injure any person's civil rights. More specifically, the four elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085, 1087 (2d Cir. 1993) (internal citation omitted). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (*quoting United States Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)). Because plaintiffs' complaint fails to allege any class-based, invidious discrimination, it fails to state a claim under § 1985(3). *See Lucas v. New York City*, 842 F. Supp. 101, 104 (S.D.N.Y. 1994) (holding plaintiff failed to state claim under § 1985(3) when complaint was devoid of any such allegations). Moreover, "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon*, 988 F.2d at 311 (internal citations omitted). Therefore, plaintiffs fail to state a cause of action under § 1985 and the claim must be dismissed.[12]

### 3. 42 U.S.C. §§ 6101-6107 (AGE DISCRIMINATION ACT OF 1975)

Furthermore, plaintiffs allege a cause of action pursuant to the Age Discrimination Act, 42 U.S.C. §§ 6101-6107 (1975). Section 6102 of the Age Discrimination Act prohibits discrimination on the basis of age under any program or activity that receives federal financial assistance. The statutory definition of the term "program or activity" includes, in part, the operation of "a department, agency, special purpose district, or other instrumentality of a State or of a local government." 42 U.S.C. § 6107(4)(A)(i). This definition, however, does not include programs administered by federal agencies.

While the Second Circuit has not explicitly held that the Age Discrimination Act does not apply to the federal agency implementing the Social Security Act, the Second Circuit has held that 42 U.S.C. § 2000d (2002), Section 601 of Title VI of the Civil Rights Act of 1964 – a statute similarly

---

[12] "Liability under § 1986, which permits an action against a person who had the 'power to prevent or aid in preventing the commission of' a wrong 'mentioned in section 1985,' but who 'neglected or refused so to do,' is dependent on the validity of a claim under § 1985." *Dwares v. New York*, 985 F.2d 94, 101 (2d Cir. 1993). Thus, to the extent plaintiff attempts to state a claim under § 1986, that claim must also be dismissed.

9

drafted to the Age Discrimination Act barring discrimination on the basis of race, color, or national origin under any program or activity receiving federal financial assistance – did not apply to federal agencies, namely, the Social Security Administration. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 38-41 (2d Cir. 1983) ("[T]he statute was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary."). In reaching its decision, the Second Circuit presented arguments that individual social security recipients cannot be considered a "program or activity" as required by the statute. *Id.* Moreover, the Fifth Amendment and Social Security Act itself provide sufficient protection against discrimination with respect to social security benefits, such that it would be unnecessary to apply the discrimination statute to the federal agency implementing the Social Security Act. *Id.*

The same arguments apply to the similarly drafted Age Discrimination Act.[13] Thus, this Court holds that the Age Discrimination Act does not apply to the federal agency implementing the Social Security Act. Accordingly, plaintiffs' claim pursuant to the Age Discrimination Act must be dismissed.

### 4. CONSTITUTIONAL CLAIMS

Plaintiffs also allege in general terms that they were subjected to "unconstitutional deprivations of [their] fourth, fifth and fourteenth amendment rights." (Am. Compl. Prelim. Statement.) Plaintiffs state that their due process rights have been violated and request millions of dollars in damages as a result of emotional and economic harm suffered. (Am. Compl. ¶¶ 58-60, 61-68.) More specifically, plaintiffs allege that their social security benefits were improperly suspended without a hearing, and that they were not afforded a hearing within a reasonable amount of time after their benefits were suspended in violation of their due process rights. (*Id.*¶ 67.)

This Court first notes that plaintiffs' complaint fails to contain any factual allegations relating to their right to remain free from "unreasonable searches and seizures." Therefore, their Fourth Amendment claim is dismissed. Moreover, because the Fourteenth Amendment does not apply to the federal government, but only to acts by a State, plaintiffs' Fourteenth Amendment due process claim is dismissed. *See San Francisco Arts & Athletics v. U.S.O.C.*, 483 U.S. 522, 542 n.21 (1987).

The Fifth Amendment Due Process Clause, however, does apply to the federal government. (*Id.*) Although the SSA may not deny plaintiffs due process, the Supreme Court has held that due process does not require an evidentiary hearing prior to the suspension of social security benefits. *See Eldridge*, 424 U.S. at 349. Despite this, plaintiffs seek money damages from the alleged unlawful suspension of their social security benefits and delay in affording them a post-suspension hearing.

Generally, plaintiffs whose constitutional rights have been violated by employees of the federal government may recover money damages pursuant to *Bivens v. Six Unknown*

---

[13] *See, e.g., Henderson v. United States*, 762 F. Supp. 868, 869 (D. Idaho 1991) ("[N]owhere in the language of the Age Discrimination Act does it grant jurisdiction to Federal Courts to review the administration of Veterans Affairs benefits.").

10

*Fed. Narcotics Agents*, 403 U.S. 388 (1971). The Supreme Court, however, has held that social security claimants may not bring *Bivens* actions alleging violations of their right to due process. *See Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988).[14] The *Schweiker* Court refused to create a money damages remedy against social security officials finding that Congress' inaction has not been inadvertent and that "the design of [the Social Security] program suggests that Congress has provided what it considers adequate remedial mechanisms" through the administrative process. 487 U.S. at 423; *see also Krauss v. Bowen*, Nos. 80-CV-2638, 83-CV-0237, 1989 U.S. Dist. LEXIS 2458, at *2 (E.D.N.Y. March 1, 1989) ("[T]he Social Security Act does not confer any right to an action for consequential or punitive damages resulting from the denial of disability benefits."). Thus, based on *Schweiker*, the Court finds that no due process claim for money damages can arise from such alleged conduct by the SSA.

Even assuming *arguendo* these types of delays were cognizable under a due process theory, the alleged delays, under the circumstances of the instant case, do not rise to the level of a due process violation. *See, e.g., Wright v. Califano*, 587 F.2d 345, 355-56 (7th Cir. 1978) (holding that when the SSA failed to schedule a hearing after 420 days, despite repeated requests, the delay did not constitute a denial of due process, and reversing district court's order requiring the SSA to provide hearings within certain time limits). Necessarily, as there has been no due process violation, to the extent plaintiff alleges due process violations against named defendants in their individual and official capacity, those claims are dismissed.

Plaintiffs, in their complaint, also petition this Court for declaratory and injunctive relief due to their delay in receiving a reconsideration decision and hearing. Since the time plaintiffs filed their complaint and defendants answered, however, plaintiffs were provided with a reconsideration decision by the SSA on September 1, 2002 and a hearing in September 2003. (*See* Mullarkey Decl., Ex. JJ.) Accordingly, this Court finds that any declaratory or injunctive relief at this time would be moot.

---

[14] To the extent plaintiffs attempt to state a claim of gender discrimination in violation of the fourth, fifth and fourteenth amendments for denying Marilyn G. Maloney reconsideration and a hearing, that claim must also be dismissed. (Am. Compl. ¶¶ 69-70.) Plaintiffs rely on *Frontiero v. Richardson*, 411 U.S. 677 (1973), in support of their gender discrimination claim. In *Frontiero*, however, a case addressing statutes that provide the rights of uniformed services members to claim their spouse as "dependent" for the purposes of living quarters and medical and dental benefits, the statutes themselves provided for different treatment of servicewomen claiming their husbands as dependents than for servicemen claiming their wives as dependents. *Id.* at 678-79. The Supreme Court found that statutory scheme constitutionally invalid in that it violates the Due Process Clause of the Fifth Amendment "by according differential treatment to male and female members of the uniformed services for the sole purpose of achieving administrative convenience." *Id.* at 690. Here, however, plaintiffs point to no gender-based distinctions under the Social Security Act. Rather, as defendants correctly point out, if Marilyn G. Maloney's and Peter J. Maloney's situations were reversed, Mr. Maloney's benefits would have been contingent on Mrs. Maloney's receipt of retirement benefits under 42 U.S.C. § 403(b)(1). Unlike the statutes addressed in *Frontiero*, here there is no differential treatment of husbands and wives under the statute. *See* 42 U.S.C. §§ 402(b), 402(c). Accordingly, plaintiff's gender discrimination claim is dismissed.

11

For all the reasons stated above, plaintiffs' constitutional claims are dismissed.[15]

### III. CONCLUSION

Plaintiffs' claim for past due social security benefits is dismissed for lack of jurisdiction and defendants' motion to dismiss the remainder of plaintiffs' complaint for failure to state claims for which relief can be granted is GRANTED.

The Clerk of the Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 19, 2006
Central Islip, New York

\* \* \*

The attorney for plaintiff is Daniel Kogan, Esq. of the Law Offices of Daniel Kogan, 94-09 101st Avenue, Ozone Park, NY 11416. The attorney for defendant is Kathleen A. Mahoney, Esq., Assistant United States Attorney, Eastern District of New York, One Pierrepont Plaza, 14th Floor, Brooklyn, New York, 11201.

---

[15] Because the Court holds that plaintiffs have failed to state a claim for which relief can be granted, the Court does not address defendants' argument that they are entitled to absolute or qualified immunity.